United States District Court
Southern District of Texas
**ENTERED**
March 15, 2021
Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| Maria Leticia Renovato, | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action H-20-643 |
| | § | |
| Andrew Saul, | § | |
| Commissioner of the Social | § | |
| Security Administration, | § | |
| *Defendant*. | § | |

# MEMORANDUM AND ORDER

Plaintiff Maria Leticia Renovato appeals the Social Security Administration Commissioner's final decision denying her applications for social security benefits. (D.E. 1.) Pending before the court are Plaintiff's Motion for Summary Judgment (D.E. 12) and Defendant's Motion for Summary Judgment (D.E. 14). Having considered the motions, filings, and applicable law, the court affirms the final decision of the Commissioner.

## 1. Procedural Posture

Maria Leticia Renovato applied for disability insurance benefits on July 28, 2017. (Tr. 364–65.) She applied for supplemental security income (SSI) on August 23, 2017. (Tr. 366–68.) Renovato claimed that she became disabled on January 1, 2017, due to depression, anxiety disorder, carpal tunnel syndrome, bipolar disorder, a knee problem, and a back problem. (Tr. 364, 393.) In her applications, Renovato

stated that she was born in 1963. (Tr. 364, 366.) She previously worked as a deli clerk and a sales clerk. (Tr. 394, 409.) The Social Security Administration denied Renovato's disability applications on September 25, 2017. (Tr. 185–97.) Renovato appealed on October 27, 2017. (Tr. 198–99.) Her applications were again denied on December 4, 2017. (Tr. 200–05.) Renovato requested a hearing. (Tr. 206–07.)

Administrative Law Judge (ALJ) David J. Hebert held two hearings in Houston, Texas on July 12, 2018, and February 22, 2019. (Tr. 36–91, 92–139.) The ALJ issued a decision on April 8, 2019, finding that Renovato was not disabled. (Tr. 8–24.) The Appeals Council denied Renovato's request for review on December 17, 2019. (Tr. 1–4.) Renovato filed her complaint in federal court on February 21, 2020, to appeal the ALJ's decision. (D.E. 1.) The parties consented to the jurisdiction of the magistrate and the district judge transferred the case to the undersigned for all further proceedings, including entry of judgment. (D.E. 10.)

## 2. Legal Standards

### A. Five–Step Process

The Social Security Act provides disability insurance benefits to people who have contributed to the program and have a physical or mental disability. *See* 42 U.S.C. § 423. It also provides SSI benefits to people who are blind or disabled with income and resources below the statutory limits set forth in 42 U.S.C. § 1382(a). *See Robinson v. Barnhart*, 248 F. Supp. 2d 607, 612 (S.D. Tex. 2003) ("Eligibility for SSI is based upon proof of *indigence* and *disability*." (citation

2

omitted)). For both types of benefits, disability is defined as the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

The Commissioner uses a sequential, five-step approach to determine whether the claimant is disabled. *Schofield v. Saul*, 950 F.3d 315, 317 (5th Cir. 2020). The claimant bears the burden of proof on the first four steps, but the Commissioner bears the burden on the fifth step. *Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018). A finding that the claimant is disabled or not disabled at any point in the five-step review terminates the analysis. *Id.*

At step one, the ALJ must determine whether the claimant is involved in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i) (2017). A person who is working and engaging in substantial gainful activity is not disabled, regardless of the medical findings. 20 C.F.R. §§ 404.1520(b), 416.920(b) (2017).

At step two, the ALJ determines whether any of the claimant's impairments are severe. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii) (2017). An impairment is not severe "only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985) (alteration in original) (quoting *Estran v. Heckler*, 745

3

F.2d 340, 341 (5th Cir. 1984)). A person who does not have a severe impairment is not disabled. *Schofield*, 950 F.3d at 318.

The ALJ next determines, at step three, if the claimant's severe impairments meet or equal the listing criteria outlined in appendix 1 of 20 C.F.R. Part 404, Subpart P (Listing). 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii) (2017). If all the criteria of a Listing are met and the impairment meets the duration requirement, the claimant is considered disabled. *Id.*

Before reaching the final two steps, the ALJ must assess the claimant's residual functional capacity (RFC) "based on all the relevant medical and other evidence." 20 C.F.R. §§ 404.1520(e), 416.920(e) (2017). An RFC assessment "is a determination of the most the claimant can still do despite his physical and mental limitations and is based on all relevant evidence in the claimant's record." *Perez v. Barnhart*, 415 F.3d 457, 462 (5th Cir. 2005) (citing 20 C.F.R. § 404.1545(a)(1)).

At step four, the RFC is used to determine whether the claimant can perform past relevant work. *Perez*, 415 F.3d at 462. If the claimant can perform their past work, they are not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2017). If the claimant cannot perform their past work, the ALJ proceeds to step five. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1) (2017).

At step five, the ALJ determines whether the claimant can perform any other work by considering the claimant's RFC and other factors, including age, education,

and past work experience. *Perez*, 415 F.3d at 462. If the claimant can perform other work available in the national economy, the claimant is not disabled. *Schofield*, 950 F.3d at 318.

### B. Substantial Evidence Standard of Review

This court's "review of the ALJ's determination is 'highly deferential': [it] ask[s] only whether substantial evidence supports the decision and whether the correct legal standards were employed." *Garcia*, 880 F.3d at 704 (citations omitted). "A decision is supported by substantial evidence if 'credible evidentiary choices or medical findings support the decision.'" *Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018) (quoting *Whitehead v. Colvin*, 820 F.3d 776, 779 (5th Cir. 2016)). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept to support a conclusion' and constitutes 'more than a mere scintilla' but 'less than a preponderance' of evidence." *Hardman v. Colvin*, 820 F.3d 142, 147 (5th Cir. 2016) (quoting *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000)). The reviewing court must examine the record as a whole to determine whether substantial evidence supports the ALJ's decision. *Randall v. Sullivan*, 956 F.2d 105, 109 (5th Cir. 1992).

### 3. Hearing

At the hearing on July 12, 2018, the ALJ heard testimony from Renovato and a vocational expert (VE). (Tr. 39–90.) Renovato testified about her work history, her daily activities, and her medical problems. (Tr. 45–72.) She testified that her depression was her most serious problem and that it kept her from daily activities.

(Tr. 53, 61–62, 66–67.) Still, she testified, she had not seen a psychiatrist "in a while." (Tr. 68.)

The VE asked Renovato questions to clarify the type of work that she performed in the past. (Tr. 75–76, 83–87.) The VE testified that Renovato's prior jobs, characterized under the Dictionary of Occupational Titles, included "medium" work as both a delivery driver and a babysitter and "light" work as both a retail sales clerk and a food sales clerk. (Tr. 77–79.) The ALJ ordered a physical consultative examination and decided to postpone the decision on disability until he could review follow-up medical records. (Tr. 74, 81, 90.)

Following the consultative examination, the ALJ opted to conduct a second hearing on February 22, 2019, where Renovato, medical expert Dr. Subramaniam Krishnamurthi, M.D., and a different VE testified. (Tr. 95–139.) At the 2019 hearing, Renovato testified that she had begun to see a psychiatrist and that the medications they prescribed were helping her. (Tr. 108–09.) She also testified that she was a heavy smoker and that this habit affected her ability to walk and do household chores. (Tr. 114–15.)

Dr. Krishnamurthi testified that the objective medical records showed that Renovato could frequently lift ten pounds, occasionally lift twenty pounds, could sit for six hours, and could stand or walk for six hours. (Tr. 119.) He also limited Renovato to frequent handling, fingering, feeling, grasping, and maneuvering and

occasional bending, stooping, crawling, crouching, and kneeling. (Tr. 120.) Dr. Krishnamurthi testified that his opinion was based on his review of the full record. (Tr. 125.)

The VE testified that she agreed with the prior VE's findings from the 2018 hearing. (Tr. 126–27.) She testified that a person limited to "light" work with restrictions on physical abilities like balancing and bending could work as a sales clerk, a food sales clerk, a general merchandise salesperson, an apparel rental clerk, and a layaway clerk. (Tr. 129, 132–33.)

The ALJ issued his decision on April 8, 2019, finding that Renovato was not disabled. (Tr. 24.)

### 4. Analysis

#### A. Step One

At step one, the ALJ correctly found that Renovoto had not engaged in substantial gainful activity since the alleged disability onset date of January 1, 2017. (Tr. 13.)

#### B. Step Two

At step two, the ALJ found that Renovato had the following severe impairments: hypertension, mild spondylosis of the lumbar spine, osteoarthritis of the right hand, and bilateral carpal tunnel syndrome. (Tr. 14.) The ALJ found the following non-severe impairments: diffuse arthralgias of multiple joints, periodontal disease/atrophy of edentulous maxillary alveolar ridge with dental pain, mild

7

common bile duct dilation with urinary incontinence and abdominal pain, edema, varicose veins, systolic murmur, hypercholesterolemia, gastroesophageal reflux disease, tobacco use disorder, and warts. *Id.*

To determine the severity of Renovato's complaints of depression, anxiety, and bipolar disorder, the ALJ analyzed the record per the criteria for evaluating mental disorders set out in "paragraph B" of Listing 12.00(A)(2)(b). (Tr. 14–16.) In his analysis, the ALJ discussed Renovato's testimony, her disability evaluation with consultative physician Dr. Karen Anderson, and the objective medical treatment records. (Tr. 14–16, 108–09, 910, 1542–43, 1571.) For example, the ALJ noted that treatment records showed Renovato could effectively communicate with medical providers and was able to take care of herself and help her brother. (Tr. 15–16, 534, 541, 547, 705, 716, 909, 1002, 1543.) Based on the records, the ALJ found that Renovato's mental impairments did not cause more than a minimal limitation in her ability to perform basic mental work activities. (Tr. 15–16.) He therefore determined that Renovato's mental impairments were non-severe. *Id.*

The court's independent review of the record reveals that substantial evidence supports the ALJ's finding at step two. Renovato does not dispute these findings.

### C. Step Three

At step three, the ALJ found that Renovato's impairments or combination of impairments did not meet or medically equal the severity of any impairment defined

in the Listing. The ALJ appropriately considered Listing sections 1.02 (joints), 1.04 (spine), and 11.01 through 11.22 (neurological) and found no evidence that Renovato's impairments reached a Listing definition. (Tr. 17.)

The court's independent review of the record reveals that substantial evidence supports the ALJ's finding at step three. Renovato does not dispute these findings.

**D. RFC**

Before turning to the final two steps of the analysis, the ALJ determined that Renovato had the following RFC:

> to lift or carry 20 pounds occasionally and 10 pounds frequently, stand or walk for 6 hours in an 8-hour workday, and sit for 6 hours in an 8-hour workday with normal breaks. The claimant cannot climb ladders, ropes, or scaffolds. The claimant can occasionally climb ramps and stairs. The claimant can occasionally balance, stoop, kneel, bend, crouch, and crawl. The claimant can only frequently handle, finger, and feel bilaterally with both hands. The claimant can only occasionally work with or around hazards, dangerous machinery, or equipment, or at unprotected heights.

(Tr. 17–18.) The ALJ stated that this determination was based on Renovato's reported symptoms, objective medical evidence, opinion evidence, and other evidence. (Tr. 18.) The court will consider whether the RFC is supported by substantial evidence.

     i.   Physical Limitations

Renovato testified that depression and pain kept her from completing daily activities. (Tr. 50–51, 53.) She testified that she had to spend most of her day sitting or bending and that her doctor prescribed Tylenol to help her manage pain. (Tr. 55–

56.) Renovato also testified that she sometimes fell due to her knee problem but that she was never prescribed any assistive device, such as a cane or a crutch. (Tr. 58–59, 114.) The ALJ incorporated some of Renovato's complaints into the RFC but determined that, overall, her statements about the intensity, persistence, and limiting effects of her pain were not entirely consistent with the medical evidence. (Tr. 20.)

The medical evidence consisted of physical examinations, observations, and specialized testing. Physical examinations showed that Renovato had minimally affected grip strength and was able to move all her fingers without difficulty. (Tr. 20, 752, 911.) In May 2017, Renovato received home exercises from a physical therapist, which were designed to improve her pain management, mobility, and strength. (Tr. 706–07.) By November 2018, Renovato had full bilateral muscle strength. (Tr. 1526.) Numerous treatment records showed that Renovato had full range of motion and normal joint examinations. (Tr. 752, 783, 796, 1526.) Radiological imaging of Renovato's hands was normal. (Tr. 18, 815.) Respiratory, neurological, and cardiovascular examinations were also normal. (Tr. 19, 817, 898–99, 941.)

The ALJ considered the medical opinions of Dr. Murali Kosuri, M.D., Dr. Karen Anderson, M.D., and Dr. Krishnamurthi. Dr. Kosuri opined that Renovato could sit, stand, and walk for up to six hours per day and could kneel, bend, climb stairs, keyboard, and lift and carry up to ten pounds for up to four hours per day.

(Tr. 575.) Dr. Kosuri also commented that Renovato could not ambulate for a "long time." (Tr. 576.) He noted that this disability was not permanent. (Tr. 575.) The ALJ found this opinion to be "persuasive, but only to the degree that Dr. Kosuri's opinion [was] consistent with the objective medical record." (Tr. 20.)

Like Dr. Kosuri, Dr. Anderson opined that Renovato could occasionally lift or carry up to ten pounds. (Tr. 913.) Unlike Dr. Kosuri, Dr. Anderson opined that Renovato could sit or stand up to only three hours per day, walk up to two hours per day, and could never operate foot controls, climb stairs or ladders, balance, stoop, kneel, crouch, crawl, finger, feel, push, or pull. (Tr. 914–16.) The ALJ noted that "Dr. Anderson essentially restricted [Renovato] physically to performing less than the full range of sedentary work" despite a fairly normal physical examination. (Tr. 20.) The ALJ found Dr. Anderson's opinion unpersuasive because it was not supported by the record or even consistent with her own examination. *Id.*

At the February 2019 hearing, Dr. Krishnamurthi testified that he had reviewed all the medical evidence but had not physically examined Renovato. (Tr. 118.) Based on the medical records, Dr. Krishnamurthi opined that Renovato could frequently lift ten pounds, could occasionally lift twenty pounds, could sit for six hours per day, and could stand or walk for six hours per day. (Tr. 119.) He also testified that Renovato could occasionally bend, stoop, crawl, crouch, and kneel.

(Tr. 120.) He limited her use of both hands to frequent handle, finger, feel, grasp, and maneuver. *Id.*

The objective medical evidence and Dr. Krishnamurthi's testimony provide substantial evidence to support the ALJ's RFC determination.

Renovato argues that the ALJ failed to properly weigh Dr. Anderson's and Dr. Kosuri's opinions. According to Renovato, Dr. Kosuri's opinion and Dr. Anderson's opinion were consistent with each other and were supported by the examination findings of physical therapists. The regulations require the ALJ to consider all medical opinions and weigh their persuasiveness based on several factors: 1) supportability; 2) consistency; 3) relationship between the medical provider and the claimant, including the frequency of examinations and the purpose and extent of treatment; 4) specialization; and 5) other factors. 20 C.F.R. §§ 404.1520c(a)–(c), 416.920c(a)–(c) (2017). The most important of these factors are supportability and consistency, which the ALJ must address in the disability decision. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2) (2017). As will be discussed next, the ALJ considered each medical opinion using the proper legal framework.

On March 30, 2018, Renovato presented for an appointment with her treating physician, Dr. Kosuri. (Tr. 627–31.) She complained of pain in her shoulders, hips, knees, joints, muscles, and hands. (Tr. 627.) She also reported weakness and stiffness in her joints but denied taking medication. *Id.* Renovato described the

intensity of her pain to be 9/10. (Tr. 631.) Dr. Kosuri noted that Renovato's physical examination was normal. (Tr. 629.) That same day, Dr. Kosuri opined that Renovato could sit, stand, and walk for up to six hours per day and could kneel, bend, climb stairs, keyboard, and lift and carry up to ten pounds for up to four hours per day. (Tr. 575.) Dr. Kosuri also commented that Renovato could not ambulate for a "long time." (Tr. 576.) He noted that this disability was not permanent. (Tr. 575.) The ALJ found this opinion to be "persuasive, but only to the degree that Dr. Kosuri's opinion [was] consistent with the objective medical record." (Tr. 20.) The ALJ noted that Dr. Kosuri did not record how he determined Renovato's ability to only carry ten pounds. *Id.* The ALJ further noted that the objective evidence did not support this limitation. *Id.*

In August 2018, Dr. Anderson, a consultative physician, conducted a physical examination of Renovato and completed a questionnaire about Renovato's ability to do work-related activities. (Tr. 909–18.) Dr. Anderson's report states that Renovato described a history of carpal tunnel syndrome, knee and back problems, hypertension, gastrointestinal problems, chronic headaches, insomnia, depression, anxiety, bipolar disorder, schizophrenia, glaucoma, and chronic fatigue. (Tr. 909–10.) No medical records were available for Dr. Anderson to review so notes about Renovato's medical history were based solely on Renovato's self-report. (Tr. 909.) Renovato rated her pain intensity at 5/10 and 7/10. (Tr. 909.)

In contrast to Renovato's self-reported symptoms, Dr. Anderson's examination of Renovato showed that she had "grossly normal full range of motion" in her cervical spine, shoulders, elbows, wrists, hands, hips, ankles, and feet but a decreased range of motion in her lower spine. (Tr. 911.) Dr. Anderson observed mild tenderness in Renovato's hands and wrists and moderate to severe tenderness in her knees and spine. *Id.* She noted that Renovato was ambulatory without assistance but had an antalgic gait (meaning she altered her gait to compensate for pain) and could not perform tandem maneuvers "due to pain and unsteadiness." *Id.* Dr. Anderson also noted that Renovato was unable to squat or hop. *Id.*

Like Dr. Kosuri, Dr. Anderson opined that Renovato could occasionally lift or carry up to ten pounds. (Tr. 913.) Unlike Dr. Kosuri, Dr. Anderson opined that Renovato could sit or stand up to only three hours per day, walk up to two hours per day, and could never operate foot controls, climb stairs or ladders, balance, stoop, kneel, crouch, crawl, finger, feel, push, or pull. (Tr. 914–16.) The ALJ noted that "Dr. Anderson essentially restricted [Renovato] physically to performing less than the full range of sedentary work" despite a fairly normal physical examination. (Tr. 20.) The ALJ found Dr. Anderson's opinion unpersuasive because it was not supported by the record or even consistent with her own examination. *Id.*

Renovato argues that Dr. Anderson's opinion is consistent with Dr. Kosuri's opinion. A review of their opinions shows that the only clear overlap was the

14

restriction to only lift or carry up to ten pounds. (Tr. 575, 913.) Otherwise, Dr. Anderson opined that Renovato could perform less than half of the functions that Dr. Kosuri found manageable. For example, Dr. Anderson opined that Renovato could only sit or stand up to three hours per workday while Dr. Kosuri thought she could sit or stand up to six hours per workday. (Tr. 575, 914.) Dr. Kosuri believed that Renovato could spend up to half of her day climbing stairs, kneeling, bending, pushing, pulling, or keyboarding, while Dr. Anderson opined that Renovato could never perform those activities. (Tr. 575, 915–16.) In his analysis, the ALJ documented these differences and compared them with the medical opinion of Dr. Krishnamurthi. (Tr. 19–20.)

During the hearing, Renovato's counsel questioned Dr. Krishnamurthi on his opinion of Renovato's ability to grasp, handle, and finger. (Tr. 121–125.) Dr. Krishnamurthi testified that he reviewed the physical examination notes made by the physical therapists and Dr. Anderson and ultimately found their notations about range of motion and summaries of x-ray imaging to be the most persuasive. (Tr. 122–24.) Dr. Krishnamurthi reviewed all the evidence in the record and testified that he simply did not find enough medical evidence to warrant additional restrictions. (Tr. 125.)

The ALJ found Dr. Krishnamurthi's opinion persuasive because it was supported by and consistent with the objective medical records in Renovato's case

file. (Tr. 20.) Other than the opinion on Renovato's ability to lift and carry, Dr. Krishnamurthi's opinion appears to also incorporate several of the same limitations described by Dr. Kosuri. The RFC determination effectively mirrors Dr. Krishnamurthi's opinion.

While Dr. Krishnamurthi's medical opinion was based on the full record, Renovato asserts that a May 2018 physical therapy assessment supported Dr. Anderson's opinion. She argues that Dr. Anderson's opinion should have been given more weight because it was supported by and consistent with the physical therapist's records. The physical therapist noted that Renovato reported pain in her shoulders, hands, and knees, described multiple falls, and stated that she felt her knee would buckle when she walked. (Tr. 704.) She described her pain intensity as ranging from 3/10 to 7/10. (Tr. 705.) Upon examination, Renovato had a slow, antalgic gait and was unable to perform straight leg raises "due to fear and knee pain" but could partially lower into a squat. (Tr. 706.) The physical therapist's ultimate assessment of Renovato was that her behavior was "fear-avoidant." (Tr. 707.) Specifically, the therapist determined that Renovato's "gait abnormalities" stemmed from psychosocial factors and sedentary lifestyle "rather than intra-articular issues currently based on special tests." *Id.*

In his determination, the ALJ acknowledged these findings and reviewed them in conjunction with the other medical evidence. (Tr. 18–20.) He noted that, although

Renovato had an antalgic gait and slow cadence, she was ambulatory without assistance. (Tr. 19.) He considered Renovato's reported pain symptoms but compared her reports with medical testing that showed only mild degenerative changes. (Tr. 20.)

The ALJ properly considered all the record evidence when analyzing the medical opinions. 20 C.F.R. §§ 404.1520b, 416.920b (2017). He was not required to adopt the findings of one particular examination. "The court does not reweigh the evidence in the record, try the issues *de novo*, or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision." *Newton*, 209 F.3d at 452. Instead, the court's duty is to determine whether the ALJ's determination was supported by substantial evidence and employed the correct legal standards. *Garcia*, 880 F.3d at 704. The ALJ discussed the evidence that both supported and contradicted all three physicians' opinions. The ALJ properly articulated his consideration of the medical findings and the persuasiveness of the medical opinions as required under §§ 404.1520c and 416.920c. Substantial evidence supports the ALJ's finding and the determination was not in error.

ii.   Mental Limitations

As to Renovato's alleged mental limitations, the ALJ considered Renovato's testimony, the relevant medical records, and opinion evidence. He noted that

17

Renovato reported a history of mental health treatment but focused his analysis on medical records within the alleged disability period. (Tr. 14–15.)

At the July 2018 hearing, Renovato described depression as her most serious problem but testified that she had not seen a psychiatrist "in a while." (Tr. 66–68.) Soon after, Renovato began meeting with a psychiatrist every other month. (Tr. 1300, 1352, 1466.) The psychiatrist prescribed Renovato medications for depression and anxiety. (Tr. 1227, 1302.) She noted that Renovato was cooperative, with good insight, judgment, and impulse control, a linear thought-process, and normal perception and thought-content. (Tr. 534, 541–42, 547–48, 1002–03, 1034.) In late 2018, another treatment record showed that Renovato had a normal mood and affect. (Tr. 1526.) By February 2019, Renovato testified that she felt her current medication regimen was helping. (Tr. 109.) She also testified that she was beginning to see a therapist and agreed that doctors found her "the right combination" of treatment. (Tr. 109–10.)

State Agency consultants opined that Renovato retained the capacity to perform work without limitations. (Tr. 145–46, 154–55, 165–67, 174–76.) Because the State Agency consultants' opinions were consistent with physicians' opinions and assessments, the ALJ found them persuasive. (Tr. 21.) Based on the objective medical findings, he determined that Renovato "retain[ed] a high degree of functioning mentally." *Id.* The ALJ noted that he "considered all symptoms and the

extent to which these symptoms [could] reasonably [have been] accepted as consistent with the objective medical evidence and other evidence." (Tr. 18.)

Renovato argues that the RFC determination is not supported by substantial evidence because the ALJ failed to incorporate any mental limitations into the RFC. Renovato points to notations in the record where she reported symptoms of depression, paranoia, and anxiety to medical providers. (Tr. 541, 533.) However, the actual medical findings observed by Renovato's treating physician undermine the symptoms she reported. For example, the same day that Renovato reported seeing things, feeling depressed, and being paranoid, her psychiatrist found her to be euthymic, cooperative, and forthcoming, with a linear thought process and intact cognition. (Tr. 541.) Actual medical examinations showed that Renovato also showed a full affect, normal speech and perception, and good insight, judgment, and impulse control. (Tr. 534, 541, 547–48, 910, 1002–03, 1034.) The ALJ was not required to include RFC limitations based on Renovato's unsupported complaints. He properly assessed the full record and determined that the alleged mental impairments would not limit Renovato's functional capacity.

Substantial evidence supports the ALJ's finding and the determination was not in error.

### E. Step Four

At step four, the ALJ found that Renovato could perform her past relevant work as a sales clerk and food sales clerk as generally performed in the national economy. (Tr. 21.) The ALJ's determination is consistent with the VE's testimony. *Id.* The court's independent review of the record reveals that substantial evidence supports the ALJ's finding at step four.

### F. Step Five

At step five, the ALJ found that Renovato could perform work as a general merchandise sales person, an apparel rental clerk, and a layaway clerk. (Tr. 22–23.) In addition to Renovato's age and education, the ALJ considered the VE's testimony about work skills that Renovato acquired from past relevant work. (Tr. 21–23, 79, 127–28.) The ALJ also compared Renovato's RFC with the physical demands of the proposed jobs based on the VE's testimony. (Tr. 21–23, 128–33.) He determined that the VE had a reasonable basis for her testimony. (Tr. 23.)

The court's review of the record confirms that substantial evidence supports the ALJ's step-five finding.

### 5. Conclusion

The court's review of the administrative record reveals that substantial evidence supports the ALJ's findings at each sequential step. The ALJ's decision denying Social Security benefits is supported by substantial evidence and is consistent with the law. There is no genuine issue of material fact, and summary

judgment is appropriate. Fed. R. Civ. P. 56(a), (c). Accordingly, the court GRANTS Defendant's motion for summary judgment. Plaintiff's motion for summary judgment is DENIED. A separate final judgment will be entered.

Signed at Houston, Texas, on March 15, 2021.

_____
Peter Bray
United States Magistrate Judge